# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BENJAMIN COLE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 15-CV-049-GKF-PJC |
| ) | |
| ANITA TRAMMELL, Warden, ) | |
| Oklahoma State Penitentiary, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner Benjamin Cole is an Oklahoma death row inmate and is represented by the Office of the Federal Public Defender. Cole's execution was set to take place on March 5, 2015. However, on January 28, 2015, the United States Supreme Court granted certiorari to review the constitutionality of the State's lethal injection protocol and stayed Cole's execution using the drug midazolam pending final disposition of the case. Glossip v. Gross, 135 S. Ct. 1197 (2015). On June 29, 2015, the Supreme Court ruled that the Oklahoma inmates, including Cole, had failed to establish that the use of midazolam violated the Eighth Amendment. Glossip v. Gross, --- S. Ct. ---, 2015 WL 2473454 (2015). The docket sheet for Case No. D-2004-1260 reflects that, on July 8, 2015, the Oklahoma Court of Criminal Appeals (OCCA) reset Cole's execution date for October 7, 2015.

In his petition, filed January 30, 2015 (Dkt. # 2), Cole asserts one ground for relief: pursuant to Ford v. Wainwright, 477 U.S. 399 (1986), he is incompetent to be executed and his execution will violate the Eighth and Fourteenth Amendments. On February 13, 2015, Respondent filed a response (Dkt. # 6). On February 20, 2015, Cole filed a reply (Dkt. # 7). Respondent asserts that Cole's

claim is unexhausted and requests this Court to deny the petition on the merits because Oklahoma's procedure is constitutional and Cole has not demonstrated that he is insane for the purpose of avoiding execution. For the reasons discussed below, the Court finds Cole has an available state court remedy in the form of mandamus that should be exhausted before habeas corpus relief is considered. This action shall be stayed while Cole exhausts his state court remedy.

## *BACKGROUND*

Cole was convicted of First Degree Child Abuse Murder and sentenced to death in Rogers County District Court, Case No. CF-2002-597. In the Opinion and Order denying habeas corpus relief, filed in N.D. Okla. Case No. 08-CV-328-CVE-PJC, the Court summarized the history of Cole's pretrial challenges to his competence as follows:

> Cole's trial counsel first raised a question regarding Cole's competency in July 2003 and filed an application for competency evaluation. O.R. Vol. I at 55-56. The trial court ordered a competency evaluation. Id. at 62-63. Cole was evaluated by Samina R. Christopher, Ph.D., of the Oklahoma Forensic Center and found to be competent to stand trial. Id. at 62-63, 74; Tr. 8/22/03 at 2-4. At the post-evaluation competency hearing, Cole's trial attorneys stipulated to the finding that Cole was competent and Cole waived a competency jury trial. O.R. Vol. I at 74; Tr. 8/22/03 at 2-7.
>
> In July 2004, Cole's trial counsel again filed an application for determination of competency alleging in part: "Defendant's mental state and communication abilities are such that they seriously interfere with his understanding of the proceedings against him and with his capability of aiding his attorney in preparation for trial." O.R. Vol. II at 239-40. The trial court again ordered an evaluation. Id. at 245. Cole was again evaluated by Dr. Christopher and was found competent. Id. at 252-59. This time there was a jury trial on the issue of Cole's competency to stand trial. The trial was held September 13-14, 2004. Cole's attorneys presented Paula Monroe, Ph.D., a licensed clinical psychologist, who testified that she believed Cole was competent to stand trial. Tr. 9/13-14/04 at 128, 134-36. Likewise, the prosecution presented the testimony of Dr. Christopher, the forensic psychologist from the Oklahoma Forensic Center who had evaluated Cole twice pursuant to the trial court's orders. Dr. Christopher testified that she also believed Cole was competent to stand trial. Tr. 9/13-14/04 at 244, 246. Two attorneys on Cole's defense team testified as to the difficulties the team had experienced representing Cole. See, e.g., Tr. 9/13-14/04 at 156-58, 174, 182-184, 201-02. His defense team believed that Cole could

2

not rationally assist counsel due to his obsession with his religious beliefs. See id. The jury determined that Cole was competent to stand trial. See Tr. 9/13-14/04 at 284.

After the jury trial on the issue of competency and less than two weeks prior to trial, Cole's trial counsel filed a motion for continuance. O.R. Vol. II at 317-45. In that motion, counsel requested a continuance in part because Cole was not cooperating with defense counsel and, thus, impeding preparation for trial. Id. at 317-18. Cole's counsel did not allege in this motion that Cole was incompetent. See id. at 317-45. At the hearing on the motion for continuance held on October 4, 2004, the trial court had a discussion with Cole without counsel for either party present. In denying the motion for continuance, the court noted that it was "unfortunate" that trial counsel was not able to communicate effectively with Cole but expressed no concern regarding his competency to stand trial. Tr. 10/4/04 at 23-24.

Cole's jury trial commenced October 12, 2004. His competency was not raised during his trial. As discussed above, the jury found Cole guilty of child abuse murder and recommended a sentence of death.

Cole v. Workman, 2011 WL 3862143, at *7-8 (N.D. Okla. Sept. 1, 2011) (unpublished) (footnote omitted).

In this case, both of Cole's trial attorneys, Gordon Lynn Burch, III, and James C. Bowen, provided affidavits describing Cole's level of participation and demeanor during trial. (Dkt. ## 2-24, 2-27). According to Burch,

> Mr. Cole was not engaged in a healthy manner in his case. He couldn't see the big picture. Instead, he would focus on details like having lawyers who were of the Pentecostal faith. Mr. Cole's behavior was beyond not cooperating. I believe he can't cooperate[.]
>
> Mr. Cole was in the Rogers County jail for about two years before the trial. He grew his hair and beard out. He would not cut his hair or shave for trial. He sat throughout the trial virtually without moving. If his Bible was open when he sat down, it stayed open to the same page. If the Bible was closed, it stayed closed. His expression never changed, no matter what was going on in the courtroom. It was as if he was completely detached from everything related to his case.

(Dkt. # 2-24 at 3, ¶¶ 12, 13. As discussed above, the jury found Cole guilty of child abuse murder and recommended a sentence of death.

3

While he omitted the issue of competency in his direct appeal, Cole alleged in his post-conviction application that he was incompetent to stand trial. Attorney Vicki Werneke represented Cole during his post-conviction proceeding. She provides an affidavit (Dkt. # 2-33), describing her interaction with Cole after filing the application for post-conviction relief on February 28, 2007. She states that:

> I recall that first time we met him. He was tall and very thin. He had long hair. He did not have a beard then, but he was not clean shaven either. We had a pleasant conversation, but it was clear he did not want to discuss his case. We told him about our investigator traveling to California to meet his family, but he did not appear interested. At subsequent meetings, Mr. Cole appeared with an ever-growing beard and hair. It was clear he never cut his hair or his beard.
> 
> . . . .
> 
> Mr. Cole never talked about his case. I attempted to engage him in conversation about the case by talking about his daughter. When I did say her name, he would withdraw from any further conversation. Sometimes he would even start rocking back and forth. At that point, I was not able to get him to reengage in any conversation and usually the visit would end.

Id. at 1-2, ¶¶ 8, 11. In its order denying post-conviction relief, the OCCA performed a merits review of Cole's competency claim when it denied his ineffective assistance of appellate counsel claim for failing to raise the competency issue on direct appeal[1] and found as follows:

> Accordingly, we find, first, that his claim has been waived, as it certainly could have been raised on direct appeal. Secondly, we find that, to the extent that the claim was raised on direct appeal. . . , it was rejected and is res judicata. Third, we find that, to the extent that any of the claim survives, it fails. Both a jury of Petitioner's peers and health professionals found he was competent to stand trial, and the fact that appellate counsel may not have directly raised this claim on appeal would not on this record amount to ineffective assistance. While Petitioner's extreme religious views may be difficult to appreciate to the common man and may have led to some decisions that few would make, we are not prepared to say counsels' decision to forego review of

---

[1] The OCCA looks to the merits of the omitted issue when it determines appellate counsel effectiveness. Hooks v. State, 902 P.2d 1120, 1123 (Okla. Crim. App. 1995).

this claim – that Petitioner's religious beliefs rendered him incompetent – was ineffective, or for that matter even wrong, based upon this record. Nor do the exhibits attached to the post-conviction application convince us that an evidentiary hearing is needed on this issue.

Cole v. State, Opinion Denying Application for Post-Conviction Relief at 4, Case No. PCD-2005-23.

On May 15, 2009, Cole filed his federal petition for writ of habeas corpus in N.D. Okla. Case No. 08-CV-328-CVE-PJC. Cole's habeas attorney, Kenneth Lee, provides his affidavit (Dkt. # 2-34), describing his interactions with Cole over a five-year period. He states that:

> After Dr. Morris's evaluation [on December 15, 2008], Mr. Cole began to isolate himself further. This was particularly troubling since Mr. Cole never left his cell to go to the yard or to go shower. By the end of December 2008 and continuing into the following years, Mr. Cole began refusing meeting with members of his team.
>
> The investigators, the other attorneys, and I continued to try to meet with Mr. Cole. I believe I met with him a total of three times in 2009, for a total of about two hours. After 2009, a distinct pattern developed. If Mr. Cole came out to meet with any of the team, he would refuse to sit down, or would sit for only a few minutes. Mr. Cole was emaciated, and hair and beard were long and somewhat unkempt. Most of our meetings were very brief lasting less than five minutes. During these rare occurrences, Mr. Cole barely spoke, and appeared distracted and disheveled – in that he did not seem to understand what was being said to him, and could only focus on the one thing he needed . . . .
>
> . . .
>
> During the five years I represented Mr. Cole, I was never able to have a substantive conversation with him about his case, the death of his daughter, his personal history, or any other relevant topic. He has never been engaged at all about his case, and he never assisted us in the legal proceedings. This was entirely frustrating. After reviewing all of the information we could find about Mr. Cole and his case, I believe he wanted us to continue with the defense he gave his trial attorneys – that unto God all things are possible. *See* Matthew 19:26 (KJV).
>
> Over the course of five years, Mr. Cole's condition has deteriorated significantly. Initially, he could write letters with full sentences. As Mr. Cole began to decompensate, his letters disintegrated into abrupt, incomplete notes on scraps of paper, usually asking for spare change and wanting us to pick up papers that were never left for us.

5

Id. at 2-3, ¶¶ 7, 8, 11, 12. This Court denied habeas corpus relief on fourteen claims, including Cole's claims that he was incompetent to stand trial and to assist in his appeal. Cole, 2011 WL 3862143. Cole appealed. The Tenth Circuit Court of Appeals denied relief. Cole v. Trammell, 755 F.3d 1142 (10th Cir. 2014). The United States Supreme Court denied certiorari review. Cole v. Trammell, 135 S. Ct. 224 (2014). As stated above, Cole's execution was set for March 5, 2015. However, on January 28, 2015, the Supreme Court stayed Cole's execution, see Glossip v. Gross, 2015 WL 341655 (2015), pending resolution of a challenge to Oklahoma's lethal injection protocol. On January 30, 2015, Cole filed this habeas corpus action. On June 29, 2015, the Supreme Court ruled that the Oklahoma inmates, including Cole, had failed to establish that the use of midazolam violated the Eighth Amendment. Glossip v. Gross, --- S. Ct. ---, 2015 WL 2473454 (2015). Cole's execution date is October 7, 2015.

## *ANALYSIS*

A federal district court cannot grant habeas corpus relief unless the petition has exhausted available state remedies before filing his habeas petition. 28 U.S.C. § 2254(b). Respondent asserts that, in this case, Cole has not exhausted available state remedies. Cole claims that the state court process is inadequate.

The Court agrees with Respondent that Cole has not exhausted an available state court remedy. Under Oklahoma law, the question of a defendant's sanity to be executed is a question for jury trial. The governing statute provides as follows:

> If, after his delivery to the warden for execution, there is good reason to believe that a defendant under judgment of death has become insane, the warden must call such fact to the attention of the district attorney of the county in which the prison is situated, whose duty is to immediately file in the district or superior court of such county a petition stating the conviction and judgment and the fact that the defendant is believed to be insane and asking that the question of his sanity be inquired into.

6

> Thereupon, the court must at once cause to be summoned and impaneled from the regular jury list a jury of twelve persons to hear such inquiry.

Okla. Stat. tit. 22, § 1005. When, as in this case, the warden has communicated her opinion that Cole is competent to be executed, Cole may file a petition for writ of mandamus in Pittsburg County District Court requesting the court to direct the warden to act. In addition, should the state district court deny mandamus relief, Cole may file a mandamus appeal at the OCCA. The OCCA will independently determine the existence of "good reason to believe" that Cole has become insane. See Ochoa v. Trammell, 504 F. App'x 705, 709 (10th Cir. Dec. 3, 2012) (unpublished) (citing Allen v. Workman, 500 F. App'x 708, 710-12 (10th Cir. Oct. 18, 2012) (unpublished)).

Cole argues that the remedy provided under Oklahoma law is inadequate because placement of the warden, the executive official responsible for carrying out the execution, as the gatekeeper of the process violates Ford, 477 U.S. at 416, 427. As a result, Cole contends that "[a]ny redress for a violation of Mr. Cole's constitutional rights must be sought through a habeas corpus action in this Court." (Dkt. # 2 at 43). However, the Tenth Circuit has determined that "the state's use of the warden as gatekeeper for the process was permissible in light of the availability of mandamus to provide judicial oversight of the warden's performance of that critical role." Ochoa, 504 F. App'x at 708. The Court acknowledges that both Ochoa and Allen are unpublished opinions and have no precedential value. Nonetheless, the opinions are persuasive authority and convince the Court that Cole has an available state court remedy, a petition for writ of mandamus, that must be exhausted.

In light of Cole's failure to exhaust an available state court remedy, this Court may dismiss the petition to allow Cole to exhaust the available remedy, stay this action while Cole exhausts, or deny the petition on the merits, notwithstanding Cole's failure to exhaust state court remedies. See Rhines v. Weber, 544 U.S. 269, 276 (2005); Doe v. Jones, 762 F.3d 1174, 1181 (10th Cir. 2014).

7

Cole's claim is not clearly lacking in merit. Furthermore, based on Cole's arguments concerning the constitutionality and adequacy of Oklahoma's state court remedy, the Court finds good cause for Cole's failure to exhaust before filing his federal habeas petition. Therefore, the Court exercises its discretion to stay this action while Cole exhausts his state court remedy and authorizes counsel to represent Cole in the state mandamus proceedings.

**ACCORDINGLY, IT IS HEREBY ORDERED that** Cole failed to exhaust an available state court remedy before filing this action. This action is **stayed** while Cole exhausts the state court remedy. The stay of this action is conditioned on Cole commencing a mandamus action in Pittsburg County District Court within fourteen (14) days of the entry of this Order and returning to this Court within fourteen (14) days once exhaustion is completed. Cole's current counsel are authorized to represent Cole in the state mandamus proceedings.

**DATED** this 8th day of July, 2015.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT